IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MWENDA MURITHI #M-04215, | ) |
| | ) |
|            Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 16-cv-00152-NJR |
| | ) |
| BRYAN GLECKLER, | ) |
| TERI ANDERSON, | ) |
| KIMBERLY BUTLER, | ) |
| JACKIE LASHBROOK, | ) |
| and JEANETTE COWAN, | ) |
| | ) |
|            Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

      Plaintiff Mwenda Murithi, an inmate who is currently incarcerated at Pontiac Correctional Center ("Pontiac"), brings this action pursuant to 42 U.S.C. § 1983 against five officials in the Illinois Department of Corrections ("IDOC") who denied his requests for protective custody at Menard Correctional Center ("Menard") in 2014-15. (Doc. 1). Plaintiff claims that he was viciously attacked by a group of inmates on April 4, 2015, after two of his requests were denied. (*Id*. at 8-16). The prison officials who denied the requests were aware of specific threats of physical harm to Plaintiff posed by members of the Latin Folks Gang.

      Plaintiff now sues these officials for failing to protect him from the attack. The defendants include Bryan Gleckler (IDOC Director), Teri Anderson (Administrative Review Board ("ARB") Chairperson), Kimberly Butler (Menard's Chief Administrative Officer), Jackie Lashbrook (Menard's Assistant Warden), and Jeanette Cowan (Menard's counselor). Plaintiff seeks declaratory judgment, monetary damages, and a change in prison policies governing protective placement. (*Id*. at 20).

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

## **The Complaint**

According to the complaint, Plaintiff was attacked by a group of inmates at Menard on April 4, 2015. (Doc. 1 at 8-16). The inmate attack occurred after two of Plaintiff's requests for protective custody were denied. He claims that the attack, and his resulting injuries, could have been avoided, if prison officials had granted his requests for protective placement in June and December 2014. Because they did not, he sustained injuries in the attack that still cause pain and suffering. (*Id*. at 10).

Plaintiff submitted his first request for protective custody on June 4, 2014, after an inmate on the upper gallery of Menard's West Cell House threatened him with physical harm if he did not enter protective custody. (*Id*. at 8). Plaintiff reported the threat to Internal Affairs Officer Dillingham the same day. Plaintiff told Officer Dillingham that the other inmates had dubbed him a "snitch," and the threat probably came from a member or affiliate of the Latin Folks Gang.[1] (*Id*.).

Plaintiff's first request for protective custody was denied on June 24, 2014. He appealed the decision the same day. On October 27, 2014, the ARB heard his appeal, and Chairperson Anderson denied the appeal the following month. He was sent back to Menard's West Cell House on December 1, 2014.

---

[1] Plaintiff alleges that he was believed to be a member of this gang as well.

On December 4, 2014, Officer Dillingham pulled Plaintiff from his cell for another interview. During the interview, the officer informed Plaintiff that members of the Latin Folks Gang planned to attack him. The officer allegedly received this information from a confidential, credible source. According to that source, the plan was to attack Plaintiff while he was stepping out of his cell for the day or running back into his cell. When Officer Dillingham offered Plaintiff the option of signing up for protective custody, he agreed to do so, but he was unable to complete the paperwork that day.

On December 8, 2014, Chairperson Cowan also interviewed Plaintiff again. She explained that Officer Dillingham had already explained the entire situation to her. Rather than offering Plaintiff protective custody, however, she asked Plaintiff if he would be willing to accept placement in the front street cell house. Plaintiff rejected this offer, after pointing out that Latin Folk Gang members were housed there. Plaintiff also pointed out that Officer Dillingham encouraged him to seek protective placement.

Plaintiff's second request for protective custody was denied on December 15, 2014. He appealed the decision, but it, too, was denied because of Plaintiff's "failure to provide additional information." (*Id*. at 10). Plaintiff was sent back to Menard's East Cell House on March 19, 2015. The cell house was on lockdown until April 4, 2015.

While returning from lunch on April 4, 2015, Plaintiff was viciously attacked by several individuals as he stood in front of his cell waiting for the locks to open. Although the attack lasted several minutes, no officers were in the area. Left to defend himself, Plaintiff threw "blind" punches as the other inmates punched him in the face and back. An officer eventually appeared after most of the attackers left and cited Plaintiff for fighting. (*Id*. at 11).

Plaintiff was taken to the health care unit for treatment of his injuries. There, he explained the entire situation to Officer Hoff, who told Plaintiff that he would look into the matter. Plaintiff never heard back from Officer Hoff.

Plaintiff was found guilty of fighting and sent to segregation for thirty days. While there, he filed an emergency grievance with the warden. He informed the warden that he was scheduled for release from segregation on the same date as one of his attackers. He asked that the two inmates remain separated. (*Id*.).

Despite his efforts, Plaintiff was not only released from segregation on the same date as one of his attackers, but he was also placed in the same holding cell with him. Plaintiff immediately brought this to the attention of a nearby officer, who separated the two inmates before Plaintiff was attacked again. (*Id*.).

Plaintiff submitted a third request for protective custody the day he was released from segregation. He was interviewed a third time. During the interview, Defendant Cowan explained that Officer Hoff had already provided her with a preliminary account. His third request for protective custody was granted on May 6, 2015.

Plaintiff maintains that he should have been placed in protective custody before he was attacked. He further claims that IDOC officials have a policy, custom, or practice of denying requests for protective custody submitted by prisoners who are believed to be gang members, unless they snitch on other gang members or have already been attacked. (*Id*. at 13-14). Pursuant to this policy, Plaintiff was denied protection until after his attacked. As a result, he sustained injuries, including a back injury, that continues to cause him pain and suffering.

Plaintiff now sues Defendants Cowan, Lashbrook, Butler, Anderson, and Gleckler for failing to protect him from the inmate attack that occurred on April 4, 2015. (*Id*. at 12-15).

He blames all five of these officials for the attack. He claims that each defendant knew of and disregarded specific threats to Plaintiff's safety when they made the decision to deny his June and December 2014 requests. Plaintiff sues the defendants in their individual and official capacities. He seeks declaratory judgment, monetary damages, and a change in the policies governing protective placement. (*Id*. at 20).

## Merits Review Under 28 U.S.C. § 1915A

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to organize the claim in Plaintiff's *pro se* complaint into the following count:

> **Count 1:** **Defendants failed to protect Plaintiff from a known risk of harm, in violation of the Eighth Amendment, when they denied his requests for protective custody in June and December 2014.**

The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of this count does not constitute an opinion as to its merit.

## Discussion

The Supreme Court has long held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal citations omitted); *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). However, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. *Farmer,* 511 U.S. at 834. In order to state a failure to protect claim, a plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate

indifference" to that danger. *Id*.; *Pinkston*, 440 F.3d at 889. A plaintiff also must prove that prison officials were aware of a specific, impending and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996).

Under § 1983, a state official may be held liable if he "caused or participated in a constitutional deprivation." *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)); *see also Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005). The official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye. . . ." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (citations omitted). However, a prison official who rules "against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a *completed act of misconduct* does not." *George v. Smith*, 507 F.3d 605, 609-610 (7th Cir. 2007) (emphasis added).

In his complaint, Plaintiff claims that the defendants denied two requests for protective custody that predated his attack on April 4, 2015. He submitted the second request for protective placement, at the behest of a prison official who warned him that he was the target of a planned inmate attack. But because the defendants have a policy, practice, or custom of denying requests by inmates with gang affiliations until they snitch on other gang members or are actually attacked, Plaintiff's requests for protective custody were denied until the latter occurred. Whether Defendants Cowan, Lashbrook, Butler, Anderson, and Gleckler actually responded to Plaintiff's pleas for protective custody with deliberate indifference remains to be determined.

For now, however, the Court cannot dismiss Count 1 against these defendants. Accordingly, **Count 1** shall proceed against Defendants Cowan, Lashbrook, Butler, Anderson, and Gleckler.

On a closing note, the Court noticed that Plaintiff mentioned a disciplinary ticket, punishment with segregation, and injuries from his attack. Plaintiff did not assert any claims against the defendants on the basis of these allegations. Given this, the allegations provided useful background information and nothing more. In addition, Plaintiff mentioned a denial of equal protection in the complaint, but this reference to a legal claim was unsupported by any factual allegations. This lawsuit therefore addresses a single Eighth Amendment failure to protect claim. All other claims are considered dismissed without prejudice.

## Pending Motions

1. **IFP Motion (Doc. 2)**

   Plaintiff filed a motion for leave to proceed *in forma pauperis*, and the motion shall be addressed in a separate Order.

2. **Motion for Service of Process at Government Expense (Doc. 3)**

   Plaintiff also filed a motion for service of process at government expense, which is **GRANTED**. Service shall be ordered on all of the defendants in the below disposition.

3. **Motion for Recruitment of Counsel (Doc. 6)**

   Plaintiff filed a motion for recruitment of counsel, which shall be referred to United States Magistrate Judge **Donald G. Wilkerson** for a decision.

## Disposition

**IT IS ORDERED** that with regard to **COUNT 1**, the Clerk shall prepare for Defendants **GLECKLER, ANDERSON, BUTLER, LASHBROOK,** and **COWAN**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of

Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, including a decision on the motion for recruitment of counsel (Doc. 6), pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if*

*all parties consent to such a referral.* Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Wilkerson** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: March 2, 2016**

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　**NANCY J. ROSENSTENGEL**
　　　　　　　　　　　　　　　　　　　　　**United States District Judge**