IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MWENDA MURITHI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 16-CV-152-NJR-DGW |
| | ) |
| BRYAN GLECKLER, TERI | ) |
| ANDERSON, KIMBERLY BUTLER, | ) |
| JACKIE LASHBROOK, and | ) |
| JEANETTE COWAN, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on the Report and Recommendation of United States Magistrate Judge Donald G. Wilkerson (Doc. 70), which recommends the Court grant Defendants' Motion for Summary Judgment (Doc. 63). Plaintiff Mwenda Murithi filed a timely objection to the Report and Recommendation (Doc. 74). For the reasons set forth below, the Court overrules Murithi's objection, adopts the Report and Recommendation, and grants Defendants' Motion for Summary Judgment.

## BACKGROUND

Murithi, an inmate in the Illinois Department of Corrections ("IDOC"), brings this action under 42 U.S.C. § 1983 (Doc. 1). He alleges IDOC officials violated his Eighth Amendment rights when they failed to protect him from a violent attack by other inmates (Doc. 1). At the times relevant to his Complaint, Murithi was incarcerated at Menard Correctional Center ("Menard"), where his co-defendant in his criminal case, Tony

Serrano, was also serving part of his sentence (Doc. 64-2, p. 37). Serrano was housed three cells and three floors above Murithi (*Id.*, p. 51). In June 2014, Serrano received a kite (a note) telling him to sign-in to protective custody to avoid a physical attack (*Id.*, pp. 49-50). He yelled down to Murithi to share this information (Doc. 64-2, p. 50). A few moments after their conversation, an unidentified inmate, housed above Murithi, told Murithi to follow suit (*Id.*, pp. 51-52). Murithi believed the threats were from a gang, in retaliation for his and Serrano's cooperation with law enforcement (*Id.*, pp. 59-60).

Murithi requested placement in protective custody, writing, "Due to the facts surrounding my case, in particular the claim that I informed to the police, I was ordered to check into protective custody or face dire consequences in the form of bodily harm" (Doc. 64-1). Murithi was placed in protective custody pending IDOC's investigation of his claims (Doc. 64-2, p. 61). A counselor at Menard ultimately recommended denying Murithi's request, and Warden Kimberly Butler adopted the recommendation (Doc. 64-1). Murithi appealed the decision, and Terri Anderson,[1] the chairperson for the Administrative Review Board, affirmed the denial (*Id.*). Murithi was placed back in general population in December 2014 (Doc. 64-2, p. 89).

Murithi testified that, a few days later, Officer Dillingham from Internal Affairs (not a defendant) told him he had information that substantiated Murithi's allegations of an impending attack (Doc. 64-2, pp. 64-67). Dillingham instructed Murithi to sign in to protective custody (*Id.*, p. 69). Dillingham denies this conversation took place (Doc. 64-6).

---

[1] The Clerk of Court is **DIRECTED** to correct Defendants' names on the docket sheet as follows: Terri Anderson for Teri Anderson and Jacqueline Lashbrook for Jackie Lashbrook.

Murithi also testified that Defendant Jeanette Cowan, a correctional casework supervisor, interviewed him about his concerns and said she became aware of his situation after talking to Dillingham (Doc. 64-2, p. 74). Cowan also disputes that this conversation took place (Doc. 64-3). Nevertheless, on December 4, 2014, Murithi was again placed in protective custody pending an investigation (Doc. 64-2, p. 155).

After investigating, both Cowan and Dillingham were unable to substantiate Murithi's allegations of needing protective custody (Doc. 64-1). Murithi could not give any Cowan any specifics except that he was threatened (*Id.* p. 5). Cowan offered to move Murithi's cell to "front street to assist with his issue," but Murithi declined (*Id.*). Furthermore, Cowan expressed concern that Murithi may be using protective custody to get near another inmate he previously assaulted (*Id.).* Therefore, Cowan recommended that Murithi's request for protective custody be denied (*Id.*). Assistant Warden Jacqueline Lashbrook and Warden Butler agreed with Cowan's recommendation, and Murithi returned to general population in March 2015 (*Id.;* Doc. 64-2, p. 155). In April 2015, Murithi was assaulted by multiple inmates resulting in cuts on his hands, red spots on his face, and back and shoulder pain (Doc. 64-2, pp. 99-110).

On August 1, 2018, Defendants moved for summary judgment, asserting Murithi's constitutional rights were not violated when he failed to give them enough information to establish he faced a substantial risk of serious harm. Even if he had, Defendants argued, he was provisionally placed in protective custody during the investigation of his claims. Thus, they acted reasonably and not with deliberate indifference.

## THE REPORT AND RECOMMENDATION AND OBJECTION

On November 1, 2018, Magistrate Judge Wilkerson entered a Report and Recommendation on Defendants' Motion for Summary Judgment (Doc. 70). Magistrate Judge Wilkerson concluded that Defendants are entitled to summary judgment because Murithi's requests for placement in protective custody did not point to a specific or imminent threat that raised awareness of a substantial risk of serious harm (*Id.*). Alternatively, Judge Wilkerson concluded that Defendants responded to Murithi's complaints in a reasonable manner by temporarily placing him in protective custody until the resolution of their investigations (Doc. 70). Mr. Murithi filed a timely objection, arguing his conversations with Dillingham and Cowan raise a genuine issue of material fact as to whether Defendants were aware of a risk to his safety (Doc. 74).

## LEGAL STANDARD

When timely objections are filed, the Court must undertake a *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). This requires the Court to look at all evidence contained in the record, give fresh consideration to those issues to which specific objections have made, and make a decision "based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion." *Harper*, 824 F.Supp. at 788 (citing 12 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3076.8, at p. 55 (1st ed. 1973) (1992 Pocket Part)); *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). If only a "partial objection is

made, the district judge reviews those unobjected portions for clear error." *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). The Court "may accept, reject or modify the magistrate judge's recommended decision." *Harper,* 824 F. Supp. at 788.

## Discussion

Murithi asserts Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. Prison officials have a duty under the Eighth Amendment to "take reasonable measures to guarantee the safety of the inmates . . ." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). This includes protecting inmates from violence at the hands of other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To establish an Eighth Amendment claim, a plaintiff must show the prison official was deliberately indifferent to a "substantial risk of serious harm" to the plaintiff's safety. *O'Brien v. Indiana Dep't of Correction ex rel. Turner*, 495 F.3d 505, 508 (7th Cir. 2007). Liability exists only when a prison official had "actual knowledge" of the risk of harm. *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015). This is generally established if the inmate reported "a specific threat to his safety." *Id.* "Complaints that convey only a generalized, vague, or stale concern about one's safety typically will not support an inference that a prison official had actual knowledge that the prisoner was in danger." *Id* at 481.

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (*quoting* Fed. R. Civ. P. 56(a)). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and

offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 232-24 (1986).

Here, Murithi does not contest that his written requests for placement in protective custody fail to demonstrate he faced a substantial risk of serious harm. He admits his initial request in June 2014 did not contain enough information, (Doc. 64-2, pp. 140-41), and his second request on December 4, 2014 did not set forth any additional information. Moreover, Murithi does not specifically object to Judge Wilkerson's conclusion that the requests were deficient, and the Court finds no clear error in Judge Wilkerson's line of reasoning. *See Johnson*, 170 F.3d at 739.

Instead, Murithi asserts a genuine issue of material fact exists as to whether Defendants were otherwise aware of a risk to his safety. Murithi testified that Cowan told him that Dillingham told her he received credible information that members of the Latin Folk were "waiting for" Murithi but that the situation had been averted (Doc. 64-2, pp. 67, 74-75). Construing this evidence in a light most favorable to Murithi, his testimony does suggest that Cowan had actual knowledge of a risk to Murithi's safety on December 4, 2014—the date he signed into protective custody.

Even if a jury found that Defendants knew of a risk to Murithi's safety on December 4, 2014, however, Defendants were not deliberately indifferent to that risk. Rather, they took reasonable measures to ensure his safety. Murithi was allowed to sign into protective custody while Cowan and Dillingham investigated his allegations. He also could have been housed on front street, which he declined. Murithi then remained in protective custody until the investigation and appeals process concluded in March 2015.

The fact that Defendants ultimately denied Murithi's request for protective custody after completing an investigation "is not dispositive of the fact that prison officials were therefore deliberately indifferent to [his] safety." *Boyce v. Moore*, 314 F.3d 884, 891 (7th Cir. 2002) (citation omitted); *Horshaw v. Casper*, No. 16-3789, 2018 WL 6583432, at *2 (7th Cir. Dec. 14, 2018) ("A guard who reasonably disbelieves a prisoner's assertion is not liable just because it turns out to have been true."). At most, the decision to deny Murithi's request for protective custody amounts to negligence, which falls short of proving Defendants acted with deliberate indifference. *See Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007) (so long as officer responded reasonably to the risk, he cannot be said to have been deliberately indifferent, even if his response did not prevent harm from occurring). Indeed, Cowan's actions in investigating Murithi's allegations separate this case from others where prison officials may have known about threats to an inmate's safety and yet took no responsive action to prevent the harm. *See Horshaw*, 2018 WL 6583432, at *1-*2. Accordingly, Murithi's objection is overruled.

The Court has reviewed the remaining portions of Judge Wilkerson's Report and Recommendation (Doc. 70) for clear error and finds none, except to note that the undersigned expresses no opinion as to Magistrate Judge Wilkerson's discussion of qualified immunity, as it is not essential to the disposition of Defendants' motion.

## CONCLUSION

For these reasons, Plaintiff Mwenda Murithi's Objection to Magistrate Judge Wilkerson's Report and Recommendation (Doc. 74) is **OVERRULED**, and the Court **ADOPTS** Magistrate Judge Wilkerson's Report and Recommendation (Doc. 70). The

Motion for Summary Judgment filed by Defendants is **GRANTED** (Doc. 63). This action is **DISMISSED**, and the Clerk is **DIRECTED** to enter judgment accordingly.

  **IT IS SO ORDERED.**

  DATED: December 19, 2018

                                  
                  **NANCY J. ROSENSTENGEL**
                  **United States District Judge**